DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Sabo appeals his conviction in the Ross County Court of Common Pleas on one count of aggravated robbery. He contends that his conviction is against the manifest weight of the evidence because the victim described his assailant as a "light skinned colored" man and Appellant is Caucasian. After reviewing the record, we conclude that the evidence supports the jury's verdict and a manifest injustice did not occur. The victim acknowledged that his original description of his attacker was erroneous and there is substantial other evidence, including a co-defendant's admission, establishing Appellant's guilt. Therefore, we affirm Appellant's conviction.
 {¶ 2} In September 2002, the State filed a Complaint in the Juvenile Division of the Ross County Court of Common Pleas alleging that Appellant, who was seventeen years old at the time, was a delinquent child based on his commission of aggravated robbery. The State also filed a motion requesting that the Juvenile Division relinquish jurisdiction and transfer the matter to the General Division. The juvenile court granted the State's request and a grand jury ultimately indicted Appellant on one count of aggravated robbery in violation of R.C. 2911.01. Appellant pled not guilty to the charge and the matter proceeded to trial in April 2003.
 {¶ 3} At trial, Charlie Ward testified that he is sixty-four years old and is on disability due to heart failure. In September 2002, he lived with Delores Manbevers and Jason and Shawna Tackett and their two children. On September 5, 2002, Mr. Ward was home alone. At around 7:00, a Thunderbird pulled into the driveway. Mr. Ward went to the door and a man he knew as "Mullins" asked if Jason was home.[2] Mr. Ward informed Mullins that Jason was not home and Mullins returned to the vehicle and left.
 {¶ 4} Approximately twenty to twenty-five minutes later, someone knocked on Mr. Ward's door and he answered it and found Mullins and Appellant standing there. Mr. Ward testified that Appellant was wearing a plaid shirt and a ball hat. Appellant was tall and slim with a brown mustache and hair "between brown and black." At the time, Mr. Ward thought Appellant was "a little bit colored" but now "guesses he isn't." Mr. Ward testified that he thought Appellant was "colored" because of the way he talked. Mullins was heavy set and well dressed, wearing dark brown, tight pants. Mr. Ward testified that Mullins had a stocky build and looked like a football player.
 {¶ 5} When Mr. Ward opened the door, Appellant told Mr. Ward they were robbing him of his money. Both Appellant and Mullins were holding approximately twelve-inch knives with wooden handles. Mullins had his knife down by his side but Appellant held his knife approximately two to three inches from Mr. Ward's stomach.
 {¶ 6} Appellant hit Mr. Ward in the mouth. Mr. Ward backed in the door, got his money out of his billfold and laid it on the floor. Mr. Ward testified that he is uncertain as to how much money he gave the men but believes it was between $300 and $500. When Mr. Ward backed into the house, the two men followed and asked Mr. Ward the location of the telephone. After Mr. Ward told them where the phone was, Appellant cut its cord. The men then asked if there was another telephone and Mr. Ward informed them that there was a phone in the bedroom. Appellant cut the cord on the bedroom telephone and pulled it out of the wall.
 {¶ 7} The men then asked Mr. Ward if there was any more money in the house. Shawna's pocketbook was sitting on the table and Appellant sifted through the pocketbook with his knife but didn't take anything out of it. While he was in the house, Appellant repeatedly cursed at Mr. Ward. As they left, the men told Mr. Ward not to call the police; however, Mr. Ward ignored this order.
 {¶ 8} Several days after the robbery, Mr. Ward was shown ten to twelve pictures by the police and asked if he could identify the person who robbed him. Mr. Ward testified that the men in all of the pictures resembled Appellant but that he recognized and identified Appellant as his assailant. During the attack, Appellant was approximately two feet away from Mr. Ward.
 {¶ 9} On cross-examination, Mr. Ward testified that he got up a little after 6:30 and the car pulled into the driveway soon thereafter. Mr. Ward testified that he only noticed one person at the door the first time he answered it.
 {¶ 10} Mr. Ward also testified that he gave a statement to Detective Mosley, including a description of the men who had robbed him. In that statement, Mr. Ward described one of the men as a "light colored guy" who was 5'8" to 5'9" tall and had a medium build. When Detective Mosley asked Mr. Ward if the man was Black or just talked like a Black person, Mr. Ward stated that he was a "light skinned Black guy."
 {¶ 11} Mr. Ward testified that Mr. Boyer is Shawna's first cousin and that he was at Mr. Ward's home the night before the robbery. Also, when Mr. Ward first described the car, he thought it was a Cougar because a Cougar and a Thunderbird look alike.
 {¶ 12} On redirect examination, Mr. Ward testified that Appellant was probably much more tanned than he now appears and that it is possible that Mr. Ward mistook Appellant's suntan for Appellant being a "man of color." However, Mr. Ward stated that it was primarily the way Appellant talked that made Mr. Ward believe that Appellant was Black.
 {¶ 13} John Boyer testified that he is Jason Thackett's cousin and that Jason lives with Mr. Ward. Mr. Boyer testified that, on September 5, 2002, he went to Mr. Ward's home with James Mullins and Appellant early in the morning, probably around 8 or 9 a.m. The three men were in Mr. Mullins' turquoise car.
 {¶ 14} The men went to Mr. Ward's home to see if Jason was there. Mr. Mullins and Appellant got out of the car, found out Jason was not home, and came back to the car. The three men started to go up the road but then turned around and went back. Appellant said "we're going to rob this nigger" and then he and Mullins got out of the car and walked up to the house. Mr. Boyer testified that Mr. Ward is not African-American and that Appellant was using the term "nigger" as a slang term. He further testified that Appellant uses that term frequently.
 {¶ 15} Mr. Boyer testified that when the three men returned to Mr. Ward's home, Appellant and Mullins both took knives out of the car and walked up to the door. Appellant knocked on the door and Mr. Mullins stood behind it. When Mr. Ward opened the door, the two men spoke to him for a second and then Mr. Mullins jerked the door open and Appellant hit Mr. Ward. Mr. Boyer acknowledged that he did not actually see Appellant strike Mr. Ward but he saw Mr. Boyer's arm move and then heard something that sounded like a hit. Further, when Appellant came back outside, Appellant told Mr. Boyer that he had hit Mr. Ward.
 {¶ 16} Appellant and Mr. Mullins then entered Mr. Ward's home. After about four or five minutes, they came outside and got in the car and the three men left. Appellant said, "I got me some money, nigger." Appellant and Mr. Mullins split the money but Mr. Boyer did not receive any of the funds.
 {¶ 17} On cross-examination, Mr. Boyer testified that he believes only Appellant went up to the door the first time the men went to Mr. Ward's house. After the robbery occurred, Mr. Boyer asked if he got any of the money and the other two men said he did not since he "didn't work for it." Mr. Boyer acknowledged that he was never charged with a crime based on these events. He also acknowledged that charges were pending against him at the time he met with Detective Mosley but that those charges were subsequently dropped due to jurisdictional issues.
 {¶ 18} The State next called James Mullins to testify. Mr. Mullins testified that he is currently serving three years for aggravated robbery based on a guilty plea. Mr. Mullins then denied that he could recall various events and eventually refused to testify. The court deemed Mr. Mullins unavailable.
 {¶ 19} Officer Ernest Large Jr. testified that, on September 5, 2002, he was dispatched to Mr. Ward's home in reference to a robbery. When he met Mr. Ward at his front door, Mr. Ward was very upset and nervous. Mr. Ward informed Officer Large of the events that had occurred. Officer Large took fingerprints from the scene and photographed the cut phone cords. However, Officer Large was unable to obtain any good prints off the door and the photographs did not turn out. Officer Large then turned the case over to Detective Mosley.
 {¶ 20} On cross-examination, Officer Large testified that Mr. Ward said that the people who robbed him were dark complected White men. Mr. Ward may have said that one of the men acted like a Black man.
 {¶ 21} Corporal John Mosley testified that in September 2002, he was temporarily assigned to the detective division of the Sheriff's Department. Corporal Mosley responded to a robbery scene at Officer Large's request. He met with Mr. Ward and took his taped statement. Mr. Ward was upset, shaky and confused but was able to describe his assailants.
 {¶ 22} The following Monday, Jason Tackett, a deputy in the Pike County Sheriff's Department, informed Corporal Mosley that Mr. Boyer had information regarding the robbery of Mr. Ward. Corporal Mosley contacted Mr. Boyer and arranged an interview. During this interview, Mr. Boyer implicated himself and others in the robbery. Corporal Mosley then contacted James Mullins at Mr. Mullins' home. Mr. Mullins denied any knowledge of the robbery but was placed under arrest and transported to the Ross County Jail. That same day, Corporal Mosley took Mr. Mullins' statement at the Sheriff's Office. Mr. Mullins stated that he, Appellant and Mr. Boyer were riding in Mr. Mullins' vehicle and went to Mr. Ward's residence. Mr. Mullins and Appellant exited the vehicle while Mr. Boyer remained inside the car. Mr. Mullins and Appellant spoke to Mr. Ward to "scope things out" and then returned to the vehicle. The three men then left but returned to Mr. Ward's residence a second time. Mr. Mullins informed Corporal Mosley that when they returned the second time, Mr. Mullins and Appellant exited the vehicle and robbed Mr. Ward. Mr. Mullins stated that he did not know how much money they stole from Mr. Ward. Mr. Mullins also stated that Appellant had punched Mr. Ward and that the men had taken knives into Mr. Ward's home when they robbed him.
 {¶ 23} Corporal Mosley testified that he recovered $84.00 from the glove box of Mr. Mullins' car, a 1994 Thunderbird, and approximately $64.00 from Mr. Mullins himself. The following day, Corporal Mosley conducted a photographic lineup with Mr. Ward. This lineup occurred after Corporal Mosley had interviewed both Mr. Boyer and Mr. Mullins. Mr. Ward identified Appellant as his assailant. However, Corporal Mosley acknowledged that during the initial interview with Mr. Ward, he had indicated that a light-skinned Black man had robbed him. Nonetheless, only Caucasian photographs were included in the line-up because of Mr. Mullins' and Mr. Boyer's admissions and identifications of Appellant.
 {¶ 24} On cross-examination, Corporal Mosley acknowledged that Mr. Ward was insistent that one of his assailants was "colored." Corporal Mosley testified that he did not credit Mr. Ward's description of the robber in this regard because the other evidence suggested that Appellant had committed the crime. Corporal Mosley also testified that at the time he interviewed Mr. Boyer, the charges against Mr. Boyer in an unrelated matter were no longer pending. However, Corporal Mosley did not inform Mr. Boyer of this fact and led him to believe the charges were still pending.
 {¶ 25} After deliberating, the jury found Appellant guilty of aggravated robbery and the court sentenced Appellant to four years incarceration, to be served consecutively to a sentence he was serving at the time of his conviction. Appellant filed a timely appeal. In his sole assignment of error, Appellant asserts that his conviction is against the manifest weight of the evidence.
 {¶ 26} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." Statev. Getsy (1998), 84 Ohio St.3d 180, 193. The reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. Statev. Thomas (1982), 70 Ohio St.2d 79, 80; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. On the other hand, we will not reverse a conviction if the State presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt.State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
 {¶ 27} Appellant argues that, due to the conflicting testimony as to the description of Mr. Ward's assailant, Appellant's conviction is against the manifest weight of the evidence. We disagree. Indisputably, Mr. Ward initially informed the investigating officers that one of the robbers was Black. However, Corporal Mosley obtained other information that contradicted this portion of Mr. Ward's description. At trial, Mr. Ward himself admitted that he was wrong about the ethnicity of his attacker and testified that he believed the man who robbed him was Black primarily because of the way the man talked, not because of his actual skin coloring.
 {¶ 28} Even discounting Mr. Ward's testimony as to the description of his assailant and Mr. Ward's later identification, there is other evidence establishing that Appellant committed the aggravated robbery. Mr. Boyer, who obviously knows Appellant, testified as to what he observed and admissions Appellant made to him. Based on this evidence, we cannot conclude that the jury lost its way or that Appellant's conviction should be overturned in the interest of justice.
 {¶ 29} Appellant's sole assignment of error is overruled and the judgment is affirmed.
JUDGMENT AFFIRMED.
Evans, P.J. Abele, J.: Concur in Judgment and Opinion.
[2] It is unclear from the record whether Mr. Ward knew Mullins' identity at the time of the robbery or learned it at some later point in time.